## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

**TOMMY FRED WRIGHT,**

      Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social
Security,

      Defendant.

**No. 12-CV-4006-DEO**

**ORDER**

———————————————

## I.  INTRODUCTION AND BACKGROUND

This matter is before the Court pursuant to Tommy Wright's (hereinafter Mr. Wright) Complaint, requesting disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 <u>et</u> <u>seq</u>.  This Court has authority to review the final decision of the Commissioner of the Social Security (Commissioner) pursuant to 42 U.S.C. § 405(g).  The parties appeared by phone for hearing on October 29, 2012.  After hearing the parties' arguments, the Court took the matter under advisement and now enters the following:

## II.  FACTUAL BACKGROUND

Mr. Wright was born in 1964 and alleges that he became disabled beginning November 26, 2007.  At that time, Mr. Wright was employed in the construction industry as a roofer.

1

On the onset date, Mr. Wright experienced pain when he was moving shingles. Tr. 98, 321. It is undisputed in the record that Mr. Wright suffered some injury while working. However, Mr. Wright alleges disability due to complex regional pain syndrome in his left arm and hand, and in his right leg, foot, hip, and arm; a herniated disc; and a need to recline 95 percent of the day. Tr. 98, 134,147. Mr. Wright continued to work full-time at the level of substantial gainful activity until May 28, 2008. Tr. 17, 85.

At the time of the hearing, Mr. Wright was forty-six years old, had a GED, and lived in a house with his wife and daughter. Tr. 492-93. Mr. Wright testified that he could not work because he could not lift his left arm over his shoulders or lift anything that needed to be twisted or pushed. Tr. 498. Mr. Wright also testified that he has little to no ability to grip and is severely affected by different weather changes. Tr. 498. Mr. Wright explained he could not work a job because any movement of his arm was too painful. Tr. 501.

### III. PROCEDURAL HISTORY

Mr. Wright applied for disability benefits in 1985 related to hearing loss. He testified that he continued to

work for many years with that condition.  Tr. 498.  On December 29, 2008, Mr. Wright filed the present application for benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401 et seq., and for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq.  His claims were denied initially and on reconsideration.  On September 7, 2011, the ALJ found that Mr. Wright was not under a disability as defined in the Act.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits.  20 C.F.R. § 404.1520.  The five successive steps are:  (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the

requirements of his past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience," a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(I). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147

(8th Cir. 1982)(en banc)).  When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain.  20 C.F.R. § 404.1545(a)(2) and (3).  An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports."  <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability.  20 C.F.R. § 404.1520(a)(4)(iv).  At step 5, if, given a plaintiff's RFC, age, education, and work experience, plaintiff can make an adjustment to other work, there is no disability.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).  This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2).  In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A..  <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1168 (8th Cir. 1984).  The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

The ALJ analyzed Mr. Wright's claim according to the appropriate multi-step methodology, and found that Mr. Wright met the insured status requirements and had maintained gainful employment for a period after the alleged onset date. Tr. 17. The ALJ further found that Mr. Wright had several severe impairments including complex regional pain syndrome of the left elbow; history of left carpel tunnel syndrome; and ulnar nerve neuropathy. <u>Id.</u> However, the ALJ determined that the combination of impairments did not equal or exceed the requirements for a finding of disability. The ALJ went on to find that:

> the claimant has the residual functional capacity to perform sedentary work ... he can lift and carry no greater than ten pounds occasionally or frequently, and he has no restriction in sitting, standing, or walking and can perform those activities at least six hours in an 8-hour workday. He can frequently climb, balance, stoop, kneel, crouch and crawl, and he must avoid working in concentrated cold environments. He cannot grip or perform any overhead work with the non-dominant left hand. He can use the left non-dominant arm up to one-third of the day, but not constantly or frequently. He has no restrictions in the use of the dominant right arm or hand.

Tr. 18.

The ALJ concluded that Mr. Wright could not return to his prior employment, but had the residual functional capacity to

perform many jobs available in the local and national economy. Tr. 23-26.

On December 6, 2011, the Appeals Council of the Social Security Administration denied Mr. Wright's request for review. Mr. Wright then filed the present claim.

**IV. STANDARD OF REVIEW**

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F. 3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. <u>Eichelberger v. Barnhart</u>,

390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall
be reversed only if it is outside the reasonable "zone of
choice."  Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir.
2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th
Cir. 1994)).  This Court may also ascertain whether the ALJ's
decision is based on legal error.  Lauer v. Apfel, 245 F.3d
700, 702 (8th Cir. 2001).  If the ALJ applies an improper
legal standard, it is within this Court's discretion to
reverse his/her decision.  Neal v. Barnhart, 405 F.3d 685, 688
(8th Cir. 2005); 42 U.S.C. 405(g).

## V.  ISSUES

Mr. Wright divides his brief into two sections.  Mr.
Wright's first argument is that the ALJ failed to make a
specific credibility finding regarding Mr. Wright's testimony
and Mr. Wright's wife's testimony.  The second argument is
that substantial evidence does not support the ALJ's denial of
benefits.  The Court will consider each issue in turn.

## VI.  ANALYSIS

In order for a plaintiff to qualify for disability
benefits, they must demonstrate they have a disability as
defined in the Social Security Act [hereinafter the Act].  The
Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months . . . .

42 U.S.C. § 423(d)(1)(A). Mr. Wright argues that the ALJ was incorrect when he determined that Mr. Wright was not disabled. Specifically, Mr. Wright argues that the ALJ's decision was not supported by substantial evidence, and the Court should determine substantial evidence supports a determination that Mr. Wright is disabled as defined in 42 U.S.C. § 423(d)(1)(A).

## A. Subjective Complaints and Credibility

"In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. See O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). However, "[a] disability claimant's subjective complaints of pain may be discounted if

inconsistencies in the record as a whole bring those complaints into question." <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 895 (8th Cir. 2006).

Mr. Wright argues that the ALJ failed to properly credit the testimony of both Mr. Wright and his family members. Specifically, Mr. Wright argues that:

> On several occasions, the ALJ stated or implied she was giving Mr. Wright's statements less weight due to his lack of recent treatment and use of non-prescription medications. ... An ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide...

Docket #10, p. 9. Mr. Wright argues that because the ALJ failed to properly credit his testimony, the case should be remanded for an award of benefits.

It is true that ALJ apparently discounted Mr. Wright's credibility based on his failure to use prescription medicine. See Tr. 23. The ALJ also discounted Mr. Wright's claims because he used a portion of his workers' compensation settlement to help his daughter. See Tr. 23, stating that, "the money he was awarded from his Worker's Compensation claim was used to buy a house and 'set his daughter up.'"

10

The Defendant argues that

> the ALJ properly considered the full record
> in determining RFC.  See <u>McKinney v. Apfel</u>,
> 228 F.3d 860, 863 (8th Cir. 2000)...The ALJ
> considered, inter alia, all the treatment
> notes, the workers' compensation documents,
> plaintiff's subjective allegations,
> plaintiff's wife's statement, the medical
> opinions, and the FCEs ...Indeed, the ALJ
> gave great weight to opinions of treating
> physicians Leonel Herrera, M.D., and
> Michael McHenry, M.D. and to the 2011 FCE;
> and some weight to plaintiff's wife's
> statement and the examining opinion of
> Jacqueline Stoken, D.O. ... In light of the
> overall evidence of record, the ALJ
> appropriately concluded that, consistent
> with the 2011 FCE that occurred immediately
> after the administrative hearing, plaintiff
> could still perform a reduced range of
> sedentary exertional level work that did
> not involve gripping, overhead use, or
> frequent use of his left arm...

Docket #14, p. 16.  The Defendant goes on to argue that

because the ALJ detailed the inconsistencies in the record he

relied upon in discrediting the claimant's testimony, the

ALJ's determination should be affirmed.

However, the Court is persuaded that the ALJ failed to

properly credit Mr. Wright's testimony regarding his pain and

the limitations it imposes on his ability to function.  The

ALJ determined that Mr. Wright's testimony regarding his pain,

or at least the extent of its affects, was not credible.

However, there is no contrary evidence.  There is no doctor on

record who can say Mr. Wright's pain is as great as Mr. Wright says it is. The ALJ implies that if Mr. Wright's pain were as severe as he claims, he would take other/additional medications. As noted in Mr. Wright's brief, this is not a proper consideration. See <u>Blakeman v. Astrue</u>, 509 F.3d 878, 888 (8th Cir. 2007), stating that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering ... information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment, such as the individual's inability to afford treatment or obtain access to free or low-cost medical services..."

Mr. Wright stated that he did not have the money to afford stronger medication. That is a reasonable explanation, given his unemployment. Given that explanation, the ALJ criticized Mr. Wright for spending the money he received from his workers' compensation settlement on his daughter, rather than for buying stronger medication. Had Mr. Wright not been injured at work, he likely would have continued his career. (It is undisputed that he can not return to it). Had he continued his career, he would have been able to provide for

his daughter. It is not unreasonable, in fact it is laudable, that he took the money from his workers' compensation settlement and provided for his daughter in the same manner he would have had he stayed at work.

At any rate, this is not an area that ALJ should venture into. The ALJ has broad discretion to determine whether a claimant is eligible for Social Security benefits. However, that discretion does not extend to examining whether a claimant has spent a workers' compensation settlement in the exact same manner the ALJ would have. In this case, the simple fact is that Mr. Wright did not get stronger medication. He explained that he could not afford them. That explanation is reasonable based on the record. Accordingly, it was inappropriate for the ALJ to make negative inferences because Mr. Wright did not seek more intense medical treatment.

Moreover, there is no evidence in the record that this is not a legitimate medical condition. Mr. Wright's medical records clearly indicate that he injured his arm while working.[1] He has a long work history, and has been regularly

---

[1] Mr. Wright initially had surgery on his on March 28, 2008. Tr. 497. He was diagnosed by Dr. Keppen with complex regional pain syndrome on July 11, 2012. Tr. 196. Doctors thereafter repeatedly affirmed that Mr. Wright had an issue

and continually employed as a laborer throughout his adult life. He sought appropriate treatment for his arm and had surgery on it. After the surgery, he slowly developed regional complex pain syndrome, which is the manner that affliction usually presents itself. In many social security cases, the claimant has a history of not working, and/or claims an abnormal presentation of their illness. In those cases, the ALJ can discredit testimony based on the poor work history or the abnormal presentation. Those factors are not present in this case. Mr. Wright has a long work history and his condition has progressed in the manner that would be expected.

For the forgoing reasons, the ALJ decision to discredit Mr. Wright's testimony is not supported by substantial evidence. The ALJ did not have a clear reason for rejecting Mr. Wright's testimony. See <u>Willcockson v. Astrue</u>, 540 F.3d 878, 880 (8th Cir. 2008). The Defendant argues that ALJ properly concluded that the Mr. Wright had the residual capacity to do sedentary work based on the factors discussed above. However, it is clear to the Court the ALJ did not give much credit to Mr. Wright's testimony, his daily activities or

_____

with pain in his arm. See Tr. 384-418, 425, 426, 429, 434.

the intensity of his symptoms. When the medical record is considered in light of Mr. Wright's testimony, it is clear that substantial evidence supports a finding that Mr. Wright is unable to work in the manner described by the ALJ.

Additionally, Mr. Wright argues that the ALJ failed to give appropriate weight to the testimony of Mrs. Wright. Specifically, Mr. Wright argues that this case should be remanded because the ALJ failed to make a credibility determination regarding his wife's statements. Docket #10, p. 10-11. The ALJ discussed the wife's statements, and implicitly found her not to be credible, stating that,

> the undersigned has given consideration to the statements by the claimant's wife, noting that, out of natural concern and devotion, it is not uncommon for spouses and other family members to place unreasonable limitations upon their loved-one's daily activities ... the undersigned finds it plausible that there has been some change in Mr. Wright's ability to do many things and gives some weight to Ms. Wright's statement, but wonders about the inability to comb his hair or trim his beard since it is his non-dominant hand that is causing trouble.

Tr. 25.

The ALJ considered Mrs. Wright's testimony and determined that it arose out of concern for her husband and that certain instances were inconsistent with the record, i.e., that Mr.

Wright would be unable to comb his hair when he has use of his dominant hand. However, as discussed above, the ALJ improperly discredited Mr. Wright's testimony. When Mrs. Wright's testimony is considered in light of Mr. Wright's testimony and the medical evidence, it is clearly credible and consistent.

**B.  Substantial Evidence.**

As discussed above, this Court cannot disturb the ALJ's findings unless those findings are not supported by substantial evidence. <u>Baker v. Barnhart</u>, 457 F.3d 882, 893 (8th Cir. 2006). The ALJ applied the appropriate multi-step methodology and found that Mr. Wright has several severe impairments. See 20 C.F.R. §§ 404.1520, 416.920. However, the ALJ determined that those impairments did not preclude Mr. Wright's ability to return to the work force.

There is no dispute in this case that Mr. Wright has complex regional pain syndrome. Nor is there much dispute that the condition has left Mr. Wright's non-dominant arm severely disabled. Rather, the dispute is whether the complex regional pain syndrome is so severe as to leave Mr. Wright completely disabled and unable to work.

Mr. Wright argues that the clear weight of the evidence

indicates that he is severely disabled, and that the ALJ cherry picked the few pieces of evidence that supported a contrary determination. Mr. Wright argues that by September 2009, his pain registered as a nine on a ten point pain scale. Mr. Wright states that his testimony is consistent with the medical evidence that he has severe regional complex pain syndrome in his non-dominant arm. He argues that with such severe pain, his life has been adversely affected and that he is unable to do many daily functions, much less work. Mr. Wright points out that Dr. McHenry affirmed the fact that Mr. Wright has 'moderately severe' pain, which is defined as pain that is present most of the time and may reach an intensity of 9 to 10 on a 10 point scale. Docket #10, p. 17. People with moderately severe pain are often unable to perform routine activities. Id.

However, the Defendant argues the ALJ appropriately considered all the evidence in the case and determined that Mr. Wright had the residual functional capacity to return to jobs that are available in significant numbers. Specifically, the Defendant argues that:

> The ALJ specifically found plaintiff had complex regional pain syndrome, and found that impairment to be severe ...The rest of the ALJ's decision is a careful examination

of the effects of that syndrome as presented by the record evidence ... The ALJ ...considered both the 2008 FCE and the 2011 FCE at length, gave both documents great weight, and made RFC findings consistent with the 2011 FCE's limitation to sedentary work (Tr. 20, 22, 25). The ALJ considered the evidence from Dr. Herrera, as she was required to do, and then considered carefully all the subsequent medical treatment, such as that provided by Dr. Lukken and Dr. McHenry (Tr. 19-25). Plaintiff also suggests the ALJ should have given more weight to Dr. McHenry's assessment of a sixteen percent impairment of the whole person for workers' compensation purposes. See Pl.'s Br. at 17-18. The ALJ properly considered this and other workers' compensation evidence, but also appropriately noted the standards for workers' compensation and disability benefits are different ...The ALJ also properly relied on Dr. McHenry's September 2009 and March 2010 letters, rather than the workers' compensation formulas (Tr. 24-26). Substantial evidence supports the RFC findings of the ALJ.

Docket #14, p. 21-22.

As was discussed above, the ALJ failed to give credit to Mr. Wright's testimony. When the medical evidence is examined with the supporting, credible, testimony of Mr. Wright, the ALJ's conclusions are thrown into serious doubt.

Additionally, Mr. Wright argues that the ALJ failed to consider statements made by the vocational expert on cross examination. Specifically, Mr Wright argues that:

18

> The ALJ relied on the testimony of the
> vocational expert who found that there were
> sedentary jobs available to the Claimant.
> However, she disregarded entirely the
> testimony of the vocational expert on
> cross-examination. When the vocational
> expert was asked to factor in the impact
> that a chronic pain condition of 8 on a 10-
> point scale would have on this gentleman's
> capacity to be employed, the expert
> testified that he would essentially be
> unemployable.

Docket #10, p. 18. Mr. Wright argues that it was an error for the ALJ to fail to consider the vocational expert's admission that a person in such a substantial amount of pain could return to work. Mr. Wright goes on to argue because his pain is an 8 out of 10, he is completely disabled and unable to return to any type of meaningful work.

Mr. Wright is correct. The ALJ found Mr. Wright's testimony regarding the severity of his symptoms not credible. Accordingly, the ALJ failed to consider the vocational expert's testimony that if the pain were as great as Mr. Wright said, there would be few jobs he could do before. Clearly, the ALJ's determination is not supported by substantial evidence. The question then becomes what remedy the Court should consider.

A decision of "disabled" may be appropriate for some individuals age 45-49 for whom Rule 201.17 does not direct a decision of disabled who do not have the ability to perform a full range of sedentary work.

Paragraph 4 defines sedentary work:

> Sedentary work represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations. Therefore, as with any case, a finding that an individual is limited to less than the full range of sedentary work will be based on careful consideration of the evidence of the individual's medical impairment(s) and the limitations and restrictions attributable to it. Such evidence must support the finding that the individual's residual functional capacity is limited to less than the full range of sedentary work.

The ALJ in this case did find that the plaintiff was limited to less than the full range of sedentary work. During the hearing, the following questions were asked:

> Q:  What percent of light or sedentary work do you feel would be retained if a person could not use the non-dominant arm?
>
> A:  I would say approximately 15 to 20 percent.
>
> Q:  Would be retained?
>
> A:  Correct.

Q: I don't know if I asked you, at sedentary with that second hypothetical what percent of the jobs did you feel would be retained?

A: I think at the sedentary level there would be approximately - - let's see - - there'd be approximately 70 to 75 percent of those jobs.

Q: But if he could only use on arm, that would dramatically reduce the job field?

A: It definitely would, yes.

Tr. 514. Mr. Wright's attorney went on to ask:

Q: Ms. Howell, if you might assume, for the purpose of this question, a few facts for me. Assume this fellow has what is called complex regional pain syndrome which is - - my understanding is a[n] inflammation of the peripheral nervous system as it relates to his left arm. And assume he is what they call hypersensitive, such that any contact with the left arm produces excruciating pain. How many of these jobs that you've just described us that he may be capable of doing would essentially be eliminated from that possibility?

A: It's a little [hard?] to answer that question. It would depend upon the level of the pain. I wonder, could you give me some kind of parameters for that pain?

Q: Assuming any substantial contact with left arm would produce probably pain in the neighborhood of eight on a zero to 10 scale.

21

> A:    Okay.  If we consider that high level
>        of pain with any considerable contact
>        I would say that such a person would
>        have    difficulty    because    that
>        individual would be spending a great
>        deal of energy attempting to protect
>        the left arm.  So - -
>
> Q:    Would he be essentially unemployable?
>
> A:    I think there would be so few jobs
>        that such a person could do that I
>        would not be able to give work in any
>        large enough numbers to be considered.

That testimony not withstanding, the ALJ determined that:

> Based on the testimony of the vocational
> expert, the undersigned concludes that,
> considering the claimant's age, education,
> work experience, and residual functional
> capacity, the claimant is capable of making
> a successful adjustment to other work that
> exists  in  significant  numbers  in  the
> national economy.  Therefore, a finding of
> "not disabled" is appropriate under the
> framework of the above-cited rules.

Tr. 27. The ALJ also stated that:

> He can use the left non-dominant arm up to
> 1/3  of  the  day  but  not  constantly  or
> frequently.

Tr. 18.

As discussed above, there is no dispute he is restricted

and the ALJ admitted that he cannot do the full range

sedentary work.  The ALJ also said that he can only use the

injured arm 1/3 of the day.  What ever that means, it is clear

that he cannot use his left arm for a good part of the day.

Additionally, according the physical abilities assessment, Mr. Wright's arm can only be used 33% or 2.5 hours a day. On the same page, it shows that Mr. Wright was unable to accomplish a firm grasp of the left hand. It further shows that his left hand fine motor manipulation is impaired. The vocational expert stated that:

> Current symptoms: Mr. Wright is currently complaining of pain through the left thumb region progressing up to the forearm and medial elbow region, and further progressing up the pectoralis and chest region. He complains of numbness into the 4th and 5th digits of the left hand as well.

Tr. 453. The vocational expert concluded that pain increases with any type of movement. Id. This Court is persuaded that the ALJ did not consider the matters set out above to the extent that the ALJ should have.

## VII. CONCLUSION

The question becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits. The Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record

'overwhelmingly supports'" a finding of disability. 42 U.S.C.
405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000).
**In this case, the Court is persuaded that a remand solely for
the award of benefits is appropriate**.

As discussed above, the ALJ's determination is not
supported by substantial evidence. However, when Mr. Wright's
testimony, Mrs. Wright's testimony, the medical evidence, and
the assessments discussed in the previous section are
considered together, it is clear that substantial evidence
supports a finding of disability.

Application for attorney fees pursuant to the Equal
Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed
within thirty (30) days of the entry of final judgment in this
action. Thus, unless this decision is appealed, if Wright's
attorney wishes to apply for EAJA fees, it must be done within
thirty (30) days of the entry of the final judgment in this
case.

**IT IS SO ORDERED** this 17th day of January, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa